IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTIAN DIOR COUTURE, S.A., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 24-cv-08376 <br><br> **Judge Martha M. Pacold** <br><br> **Magistrate Judge Keri L. Holleb Hotaling** |

### PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER [22]

Plaintiff Christian Dior Couture, S.A. ("Plaintiff") respectfully requests the Court to reconsider its Order [22] (the "Order") denying Plaintiff's Motion for Leave to File Under Seal [3] and Plaintiff's Motion for a Temporary Restraining Order, including a Temporary Injunction, a Temporary Asset Restraint, and Expedited Discovery [14] (the "Motions"). Plaintiff respectfully submits that, in accordance with Plaintiff's Motions, the Court has the authority to grant both an asset restraint and allow the documents to remain under seal until said asset restraint can be effectuated. *See, e.g., Sega Corporation, et al. v. The P'ships & Unincorporated Ass'ns Identified on Schedule "A", et. al.*, No. 1:24-cv-10919 (N.D. Ill. Nov. 22, 2024) (unpublished) (Dkt. No. 23 at p. 2) (Valderrama, J.) (granting, in part, plaintiff's motion for reconsideration, a limited asset restraint, and leave to file certain documents under seal).

### BACKGROUND

As alleged in Plaintiff's Complaint, Defendants are advertising, offering for sale, and selling Counterfeit Products through e-commerce stores operating under the Seller Aliases identified in Schedule A to the Complaint [2]. [1] at ¶¶ 2-3. Because of the unique circumstances

1

and problems caused by offshore, Internet-based counterfeiters, Plaintiff seeks an *ex parte* TRO to preserve Plaintiff's right to an equitable accounting of Defendants' ill-gotten profits. *See* [3] at pp. 1-2.

There is a high probability that Defendants will transfer assets to foreign jurisdictions upon learning of this case. As such, Plaintiff requested leave to file Schedule A to the Complaint [2] and Exhibit 5 to the Declaration of Nicolas Lamber [18] (the "Sealed Documents") under seal and requested that they remain sealed until the TRO could be effectuated. [3] at pp. 1-2. The Court denied the Motions and advised that the Court is not persuaded that an asset freeze is warranted and that if Plaintiff wishes to proceed with this case, Plaintiff must file the Sealed Documents publicly on the docket. [22].

## ARGUMENT

"Motions for reconsideration serve a limited function: to correct errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F. 3d 1264, 1269 (7th Cir. 1996) (citations omitted). Under Seventh Circuit precedent, "a restraint on assets [is] still proper if a suit sought equitable relief," which includes when a plaintiff sought an accounting and profits remedy "in the alternative in its initial complaint" to statutory damages. *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333, 144 L. Ed. 2d 319, 119 S. Ct. 1961 (1999)). In this case, Plaintiff sought an equitable accounting of Defendants' infringing profits under the Lanham Act and, in the alternative, statutory damages. [1] at Prayer for Relief ¶¶ 4-5. As such, there is a valid basis for an asset restraint.

Because Plaintiff requested equitable relief in its Complaint, and because the Court has the inherent authority to grant pre-judgment asset restraints, Plaintiff respectfully requests the Court

2

reconsider its Order [22] and grant Plaintiff's Motions. If the Court does not wish to grant a total restraint on accounts tied to Defendants' e-commerce stores, Plaintiff respectfully requests an asset restraint that is limited to proceeds traceable to Defendants' sales of the Countefeit Products. This will preserve Plaintiff's ability to seek equitable relief for Defendants' infringement of the CHRISTIAN DIOR Trademarks. *See* [1] at Prayer for Relief ¶¶ 4-5.

I. **FILING UNDER SEAL AND SEEKING *AN EX PARTE* TRO IS NECESSARY FOR COMBATTING THE UNIQUE PROBLEM OF OFFSHORE, INTERNET-BASED COUNTERFEITERS**

"The trial court's primary function is to make violations of the Lanham Act unprofitable to the infringing party." *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.,* 754 F.2d 738, 744 (7th Cir. 1985). The success of the Plaintiff's brand has resulted in significant counterfeiting of the CHRISTIAN DIOR Trademarks. [1] at ¶ 18. Like many brand owners, Plaintiff has identified e-commerce stores on online marketplace platforms, including those operating under the Seller Aliases, selling Counterfeit Products. *Id*. Plaintiff is unable to effectively enforce against this problem by dealing directly with e-commerce platforms because they have burdensome and ineffective takedown procedures, lack adequate verification methods when registering sellers, and do not provide a deterrent effect for future counterfeiters. *Id*. at ¶ 19. As a result, Plaintiff, like many brand owners, regularly pursues *ex parte* TROs and files motions for leave to file under seal to keep Defendants from learning of these proceedings before the asset restraint can be effectuated. This allows Plaintiff, and other brand owners, to obtain relief from Defendants' infringement of its valuable intellectual property.

Courts in this District have acknowledged that because of the unique circumstances and problems caused by offshore, Internet-based counterfeiters, preventing Defendants from learning of these proceedings before a TRO can be effectuated is necessary and appropriate. Specifically, there is a high risk that Defendants will fraudulently transfer assets outside this jurisdiction upon

3

notice of these proceedings before an asset restraint is in place. *See* [16] at ¶¶ 5-11; *see Columbia Pictures Indus. Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. Apr. 12, 1996) ("proceedings against those who deliberately traffic in infringing merchandise are often rendered useless if notice is given before temporary injunctive and impoundment relief can be granted"); *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 U.S. Dist. LEXIS 205985, at *7 (N.D. Ill. Oct. 30, 2013) ("Schedule A, which is filed under seal in order to allow [plaintiff] time to serve financial institutions and payment hosting services with the TRO without advance warning to the defendants, who likely would seek to transfer the money elsewhere"); *see also FCA US LLC v. The P'ships, et al.*, No. 23-cv-05539 (N.D. Ill. Oct. 20, 2023) (unpublished) (Dkt. No. 49) (Tharp, Jr., J.) ("[T]he Court is acknowledging the reality that [defendants] and similar entities—which are credibly accused of peddling counterfeit or IP-infringing goods on these third party websites, likely to have no other identifiable assets within the reach of U.S. courts' jurisdiction, and capable of eluding collection of any judgments against them (in the absence of an asset freeze) while continuing to do business by simply creating new e-commerce storefronts under different aliases—pose a genuine and significant risk of engaging in said tactics").

The fact that Plaintiff, like many brand owners, regularly pursues *ex parte* TROs reflects not only the sheer number of online counterfeiters Plaintiff must contend with, but also that marketplace takedown procedures are ineffective, cumbersome, and provide no deterrence for listing counterfeit goods in the first place. The combination of securing an *ex parte* TRO while preventing Defendants from learning of this proceeding until the TRO is effectuated (by keeping the Sealed Documents under seal) is necessary and appropriate to combat the unique problem of offshore, Internet-based counterfeiters.

II. **PLAINTIFF SATISFIES THE CRITERIA FOR ENTRY OF AN *EX PARTE* TRO, INCLUDING A TOTAL TEMPORARY ASSET RESTRAINT**

    a. **The Court Has Authority to Enter an Asset Restraint Because Plaintiff is Seeking Equitable Remedies**

The Seventh Circuit has made clear that an asset restraint is proper if the plaintiff sought equitable relief. *CSC Holdings Inc.*, 309 F.3d at 996 (citing *Grupo Mexicano*, 527 U.S. at 333). The Seventh Circuit has equally made clear that an asset restraint is proper when a plaintiff had "the option of seeking either statutory damages, actual damages, or an accounting and profits remedy" and sought an accounting and profits remedy "in the alternative in its initial complaint" to statutory damages. *CSC Holdings Inc.*, 309 F.3d at 996. In its Complaint, Plaintiff's request for relief in this action included, among other things, an award of Defendants' infringing profits from sales of Counterfeit Products pursuant to 15 U.S.C. § 1117(a) or, in the alternative, statutory damages pursuant to 15 U.S.C. § 1117(c)(2). [1] at Prayer for Relief ¶¶ 4-5.

The Lanham Act provides Plaintiff with the equitable remedy of recovering Defendants' infringing profits, and "[i]n such cases, courts have generally concluded that an asset freeze is appropriate to ensure that permanent equitable relief will be possible." *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, Nos. 03 C 4844, 03 C 5311, 2005 U.S. Dist. LEXIS 28917, at *56 (N.D. Ill. Nov. 8, 2005) (citations omitted). *See also Johnson & Johnson v. Advanced Inventory Mgmt.*, 2020 U.S. Dist. LEXIS 248831, at *8 (N.D. Ill. July 20, 2020).

Plaintiff originally requested a total asset restraint because the specific amounts of Defendants' profits derived from the sale of Counterfeit Products are unknown at this time. *See Deckers Outdoor Corp*. 2013 U.S. Dist. LEXIS 205985, at *7. A defendant may, at any time during the asset restraint, exempt assets from a freeze by "present[ing] documentary proof that particular assets [are] not the proceeds of counterfeiting activities." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) (quoting *Luxottica USA LLC v. The*

*Partnerships, et al.*, No. 1:14-cv-09061, 2015 U.S. Dist. LEXIS 78961, 2015 WL 3818622 (N.D. Ill. June 18, 2015)).

As outlined in Plaintiff's Memorandum in Support of Plaintiff's Motion for Entry of a Temporary Restraining Order, Including a Temporary Injunction, a Temporary Asset Restraint, and Expedited Discovery, Plaintiff has satisfied the criteria for entry of an *ex parte* TRO. *See generally* [15]. Therefore, because Plaintiff has demonstrated that it has satisfied the criteria established by the Seventh Circuit for entry of an *ex parte* TRO and has requested an equitable remedy in its Complaint, an *ex parte* asset freeze is appropriate and warranted. *See, e.g., Sega Corporation, et al. v. The P'ships & Unincorporated Ass'ns Identified on Schedule "A", et. al.*, No. 1:24-cv-10919 (N.D. Ill. Nov. 22, 2024) (unpublished) (Dkt. No. 23 at p. 1) (Valderrama, J.) ("because Plaintiffs do seek an accounting of profits (that is, disgorgement of profits) under 15 U.S.C. § 1117(a), an asset freeze is warranted").

**b. In Many Cases, it is Necessary and Appropriate that Plaintiff Seek Statutory Damages in the Alternative to Equitable Remedies**

As discussed *supra*, Plaintiff sought statutory damages in the alternative to equitable relief for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) under the Lanham Act. [1] at Prayer for Relief ¶¶ 4-5. The Court acknowledges that at the end of many Schedule A cases, plaintiffs frequently ask the district court to unfreeze funds subject to the asset restraint in a TRO for awards of statutory damages, instead of equitable relief. [22]. The Court claims it is not persuaded that Plaintiff will actually seek or obtain equitable relief in the form of an accounting of profits as opposed to statutory damages in this case. *Id*. However, it is necessary and appropriate for Plaintiff to seek statutory damages in the alternative to equitable relief in its Complaint, and it is further necessary and appropriate for the Court to transfer assets frozen in an asset restraint to satisfy a judgment.

As a practical matter, many Schedule A defendants do not produce evidentiary documents or even participate in the lawsuit. As such, it is necessary for Plaintiff to seek statutory damages at the outset given the difficulty, if not impossibility, to prove the dollar figure of Defendants' ill-gotten profits due to Defendants' choice to not participate in the action. *Deckers Outdoor Corp. v. Doe*, No. 11 C 10, 2011 U.S. Dist. LEXIS 119448, at *10-11 (N.D. Ill. Oct. 14, 2011) ("Courts commonly find statutory damages appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed") (collecting cases); *see Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991) (a copyright owner can recover actual damages, "[h]owever, because these damages are often virtually impossible to prove, a copyright owner may elect instead to recover statutory damages"). Plaintiff, like other brand owners in Schedule A cases, seeks statutory damages in the alternative to equitable relief because of the real possibility that Plaintiff may be unable to accurately determine an accounting of Defendants' infringing profits. If Plaintiff did not seek statutory damages as a form of relief in its Complaint, it would be left without any remedy at all at the case's conclusion if Defendants did not participate in this action.

Additionally, an award of statutory damages deters would-be counterfeiters, a goal shared by the equitable award of Defendants' infringing profits. *Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1205 (7th Cir. 1990) (an award of defendant's profits "flow[s] not from the plaintiff's proof of its injury or damage, but from its proof of the defendant's unjust enrichment or the *need for deterrence*") (emphasis added). The Seventh Circuit has said that "courts have *required* that the final remedy imposed under section 35(a) [of the Lanham Act] provide a sufficient deterrent to ensure that the guilty party will not return to its former ways and once again pollute the marketplace." *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1348 (7th

Cir. 1994) (emphasis added). Courts have also held that damages awards limited to lost profits would have little to no deterrent effect on future violations – an infringer "must fear more than just having to turn over his ill-gotten gains to the rightful owners." *Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, No. 03 C 4986, 2004 U.S. Dist. LEXIS 22563, at *17 (N.D. Ill. Nov. 5, 2004).

Plaintiff's request for statutory damages in its Complaint, in the alternative to the equitable remedy of Defendants' infringing profits, is practical, necessary, and furthers the goal deterring future infringement, a goal shared by the equitable award of Defendants' ill-gotten profits.

### c. The Court has the Authority to Transfer Funds Held in an Asset Restraint to Satisfy a Default Judgment

As discussed *supra*, the Court is not persuaded that a prejudgment asset freeze is warranted in this case. [22]. The Court cites *Zorro Productions, Inc. v. Individuals* and claims that the asset restraint is not proper because "…plaintiffs often initially demand equitable relief in the form of an accounting of profits, but after obtaining a temporary asset freeze, plaintiffs uniformly shift their focus to demanding statutory damages…" and "…seek prejudgment asset restraints to establish a fund from which money damages may be awarded." [22], citing *Zorro Prods., Inc. v. Individuals,* No. 23-cv-5761, 2023 WL 8807254, at *4 (N.D. Ill. Dec. 20, 2023). This ignores Seventh Circuit precedent that holds that an asset restraint is justified when a plaintiff seeks equitable relief. This also ignores the Court's power to transfer assets under Illinois state law to satisfy a judgment. Fed. R. Civ. P. 69(a)(1).

As a preliminary matter, Plaintiff has demonstrated through its well-pleaded Complaint that it plans to seek equitable relief at the end of this case. [1] at p. 16. The Lanham Act is clear: "the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages . . . as

the court considers just." 15 U.S.C. § 1117(c). Thus, Plaintiff does not need to elect which damages to recover until final judgment is rendered.

The Seventh Circuit has established that "Illinois law, in turn, provides the court with a variety of tools that can be used to satisfy a judgment. For example, the court may . . . order parties and non-parties to transfer funds to satisfy a judgment, and— as is germane here—it may summarily compel a party or non-party to produce funds within their control." *Bank of Am., N.A. v. Veluchamy*, 643 F.3d 185, 188 (7th Cir. 2011) (citing 735 ILCS 5/2-1402(a)-(c)). A court may, upon learning that "third parties hold assets of the judgment debtor . . . may order the third party 'to deliver up those assets to satisfy the judgment.'" *Dexia Crédit Local v. Rogan*, 629 F.3d 612 (7th Cir. 2010) (quoting *Pyshos v. Heart-Land Dev. Co.*, 258 Ill. App. 3d 618, 196 Ill. Dec. 889, 630 N.E.2d 1054, 1057 (1994)). As such, the Court may, under Illinois law, transfer funds frozen in an asset restraint to satisfy a default judgment, whether it is an award of statutory damages or an equitable accounting of Defendants' infringing profits.

### III. IN THE ALTERNATIVE, PLAINTIFF REQUESTS AN ASSET RESTRAINT LIMITED TO PROCEEDS ATTRIBUTABLE TO DEFENDANTS' INFRINGING CONDUCT

Plaintiff maintains the originally requested asset restraint is necessary and appropriate, and that the burden is on the party seeking to exempt assets from an asset freeze to present evidence its funds are *not* the proceeds of infringing activity. However, if the Court is unwilling to grant a total asset restraint, Plaintiff requests that it grant an asset restraint limited to proceeds attributable to Defendants' infringing conduct.

Paragraph 6(b) of the proposed temporary restraining order Plaintiff originally submitted to the Court directs third parties holding funds for Defendants to locate all accounts and funds connected to the Defendants and to "restrain and enjoin any such accounts or funds from transferring or disposing of any money or other of Defendants' assets until further ordered by this

9

Court." Should the Court be amenable to revising this provision to proceeds traceable to sales of Counterfeit Products, Plaintiff proposes the following language for paragraph 6(b): "restrain and enjoin any such accounts or funds from transferring or disposing of money or other of Defendants' assets that are traceable to the proceeds of sales of Counterfeit Products, until further ordered by this Court, or the expiration of this Order, whichever is earlier. Upon a showing that restrained assets are not attributable to the sale of Counterfeit Products, the Court will modify the asset restraint."

If the Court does not grant Plaintiff's originally requested asset restraint, Plaintiff respectfully requests that the Court grant a limited asset restraint as described above and keep the Sealed Documents under seal until the limited asset restraint can be effectuated.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to reconsider its Order [22] denying Plaintiff's Motions. Because Plaintiff seeks an equitable remedy of an accounting of Defendants' infringing profits, a total asset restraint is appropriate, and the Sealed Documents should remain sealed so that the asset restraint can be effectuated. If the Court is not amenable to granting a total asset restraint, Plaintiff respectfully requests the Court grant a modified asset restraint limited to proceeds traceable to Defendants' sales of Counterfeit Products.

Dated this 17th day of January 2025.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Kahlia R. Halpern
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
khalpern@gbc.law

*Counsel for Plaintiff Christian Dior Couture, S.A.*